O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER WEBSTER-BEY,** ) | NO. CV 10-1681-VBF (MAN) |
| ) | |
| ) | MEMORANDUM AND ORDER DISMISSING |
| **Plaintiff,** ) | |
| ) | FIRST AMENDED COMPLAINT WITH LEAVE |
| v. ) | |
| ) | TO AMEND |
| **SAN BERNARDINO COUNTY** ) | |
| **SHERIFF'S DEPARTMENT, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| _____ ) | |

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, on November 1, 2010.

Congress has mandated that courts perform an initial screening of prisoner civil rights actions. This Court "shall" dismiss such a civil action before service of process if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks relief against a defendant who is immune from suit. 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). In screening such a complaint, the Court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any

1  doubt.  See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623
2  (9th Cir. 1988).  A *pro se* litigant must be given leave to amend his or
3  her complaint unless it is absolutely clear that the deficiencies of the
4  complaint cannot be cured by amendment.  *Id.*; Noll v. Carlson, 809 F.2d
5  1446, 1448 (9th Cir. 1987).

## ALLEGATIONS OF THE COMPLAINT

Plaintiff is currently incarcerated at Salinas Valley State Prison. (Complaint at 2.)  His claims arise out of his prior detention at the West Valley Detention Center ("WVDC"), a detention facility in Rancho Cucamonga operated by the San Bernardino County Sheriff's Department ("Sheriff's Department").  (*Id.*)  He has named the following defendants: Deputy Sheriff Donor; Deputy Sheriff Davalos; Sergeant O' Brian; and the WVDC.  (*Id.* at 3-4.)  In addition, plaintiff names the Sheriff's Department as a defendant in the caption, although not in the body, of the Complaint.  (*Id.* at 1.)  Plaintiff sues the individual defendants in their individual and official capacities.  (*Id.* at 3-4.)

Plaintiff asserts claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment and under the California Constitution. (Complaint at 5.)  He alleges the following facts:[1]

On July 1, 2008, plaintiff experienced chest pains and severe

---

[1] Plaintiff has incorporated the facts set forth in a "Declaration and Start of Complaint," dated August 1, 2008, and apparently prepared for a state court action, which plaintiff has attached to the Complaint.  The Court will refer to the "Declaration and Start of Complaint" as "Attach."

itching. (Complaint, Attach. at 1.)  He believed that he was suffering an allergic reaction and contacted custodial staff. (*Id.*)  Deputy Donor handcuffed and leg-shackled plaintiff and escorted him to the medical clinic.  (*Id.* at 1-2.)

At the clinic, plaintiff described his problem to the medical staff person on duty.  (Complaint, Attach. at 2.)  The medical staff person told Deputy Donor to take plaintiff back to his cell, saying that plaintiff could fill out a "sick call" slip for a medical appointment. (*Id.*)  Plaintiff attempted to explain that he was suffering chest pains and asked to speak to a senior officer.  (*Id.*)  Deputy Donor told plaintiff to get up from his chair and threatened him with force when plaintiff repeated his request to speak with a senior officer.  (*Id.*) Plaintiff nevertheless reiterated his request.  (*Id.*)  Deputy Donor reached towards plaintiff.  (*Id.*)  Believing that the deputy would strike him, plaintiff turned his face away and tried to retreat.  (*Id.*) Deputy Donor struck plaintiff in the head behind his left ear, grabbed him around the throat, and slammed him face down to the ground.  (*Id.* at 2-3.)  Other deputies arrived and began to jump on plaintiff's back and twist his arms, hands, and feet.  (*Id.* at 3.)  Plaintiff was carried away from the clinic and again assaulted.  (*Id.*)

Afterwards, Deputies Donor and Davalos escorted plaintiff to his housing unit.  (Complaint, Attach, at 3.)  Deputy Donor threatened to "write up" plaintiff for lunging at him.  (*Id.*)  Plaintiff again asked to speak with a senior officer regarding his need for medical attention. (*Id.*)  Deputies Donor and Davalos then returned him to his cell, removed his leg shackles, and locked him in, with his hands still handcuffed

3

behind his back. (*Id.*)

Plaintiff saw the food trap door open. (Complaint, Attach. at 3.) He backed up to the slot and placed his hands through it so that his handcuffs could be removed. (*Id.*) Deputy Donor applied pressure to plaintiff's hands and fingers, causing him pain. (*Id.*) Donor then tried to pull plaintiff's arm back through the slot, causing him more pain. (*Id.* at 3-4.) When plaintiff resisted having his arm pulled, Donor let go of plaintiff's hand, retrieved his Taser gun, and fired at plaintiff's arm. (*Id.* at 4.)

The shock knocked plaintiff to the ground, temporarily paralyzing him. (Complaint, Attach. at 4.) The two deputies yelled at him to turn over, but he was unable to do so. (*Id.*) Plaintiff received another shock with the Taser; he tried to turn over as directed but was tasered a third time. (*Id.*) Deputy Davalos then told Deputy Donor, "O.K. That's enough," but Donor continued tasering plaintiff. (*Id.*) Davalos again tried to stop Donor but Donor ignored him, and Donor swore at and continued tasering plaintiff until plaintiff had trouble breathing. (*Id.*) The two deputies then entered the cell, removed plaintiff's handcuffs, removed the Taser probes from his arm, and left. (*Id.*)

Soon afterwards, other deputies arrived and yelled at plaintiff to get up. (Complaint, Attach. at 5.) Plaintiff was unable to do so, and the deputies dragged and carried him to the lobby. (*Id.*) He was evaluated by a medical staff person and told that he would be seen by a physician. (*Id.*) Plaintiff was then placed in the "hole" and was disciplined for 30 days for battery on an employee. (*Id.*)

4

When plaintiff was eventually seen by a physician, he learned that his itching was due to scabies. (Complaint, Attach. at 5.) He was prescribed pain medication and was scheduled for X-rays. (*Id.*)

Plaintiff seeks compensatory and punitive damages. (Complaint at 6.)

**DISCUSSION**

**I. PLAINTIFF'S EXCESSIVE FORCE CLAIM AGAINST DEPUTY DONOR WITHSTANDS SCREENING.**

At the pleading stage, plaintiff's factual allegations are sufficient to state a claim against Deputy Donor for excessive force under either the Cruel and Unusual Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment.

Plaintiff asserts his excessive force claim under the Eighth Amendment. (Complaint at 5.) The Cruel and Unusual Punishment Clause of the Eighth Amendment applies only to convicted prisoners. Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S. Ct. 1401, 1412 n.40 (1977). The Due Process Clause of the Fourteenth Amendment governs excessive force claims brought by pre-trial detainees. Bell v. Wolfish, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 1872 n.16 (1979). Thus, whether plaintiff's excessive force claim arose under the Eighth Amendment or the Fourteenth Amendment depends on his status at the time the allegedly excessive force was used against him. In his First Amended Complaint, plaintiff should clarify his status (*i.e.*, convicted prisoner or pre-

trial detainee) and specify the applicable constitutional provision.

**Plaintiff is cautioned that although his excessive force claim against Deputy Donor has withstood screening, he must re-allege the claim in his First Amended Complaint to continue to pursue it.**

II. **PLAINTIFF FAILS TO ALLEGE EXCESSIVE FORCE OR OTHER CONSTITUTIONAL CLAIMS AGAINST DEFENDANTS DAVALOS AND O'BRIAN**.

In addition to his excessive force claims alleged against Deputy Donor, plaintiff asserts excessive force claims against Deputy Davalos and Sergeant O'Brian. (Complaint at 3, 5.)

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. Section 1983. As defined by the courts, a person "subjects" another to the deprivation of a constitutional right within the meaning of Section 1983 if he or she does an affirmative act, participates in another's affirmative act, or omits to perform an act which he or she is legally required to do that causes the complained-of deprivation. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Thus, Section 1983 liability requires a showing that the defendant personally participated in the alleged constitutional violation. *See* Jones v. Williams, 297 F.3d 930, 934-35 (9th Cir. 2002); Taylor v. List, 880 F.3d 1040, 1045 (9th Cir. 1989).

6

1 Applying these principles, plaintiff's allegations are insufficient 2 to state a claim against Deputy Davalos. Plaintiff alleges that Deputy 3 Davalos was present when Deputy Donor assaulted him. (Complaint at 3.) 4 He alleges that Davalos: helped Donor escort plaintiff back to his 5 cell; yelled at plaintiff to turn over after Donor tasered him; and told 6 Donor to stop tasering plaintiff. (Complaint, Attach. at 3, 4.) 7 Plaintiff does not allege that Davalos hit him, tasered him, or directed 8 or encouraged Donor to use force against him. On the contrary, 9 according to plaintiff's allegations, Davalos tried to *stop* Donor from 10 repeatedly tasering plaintiff.

12 Plaintiff contends that Davalos prepared a false report to cover 13 up the incident. (Complaint at 3.) However, preparing a false report 14 about an incident *after* it occurred cannot subject an individual to 15 liability for the force used *during* the incident.[2] Allegations that a 16 defendant participated in a cover-up state a Section 1983 claim only if 17 the cover-up deprives plaintiff of his right of access to courts by 18 causing him to fail to obtain redress for the constitutional violation 19 that was the subject of the cover-up. *See* Karim-Panahi, 839 F.2d at 20 625; Rose v. City of Los Angeles, 814 F. Supp. 878, 880-81 (C.D. Cal. 21 1993). Thus, a cover-up claim is premature when, as here, plaintiff's 22 action seeking redress for the underlying constitutional violation,

---

[2] *See* Villegas v. Schulteis, 2009 WL 3157519, *5 (E.D. Cal. Sept. 28, 2009)("While Walker's actions in submitting a false report and covering up the incident to protect his fellow correctional officers are wrongful, they do not rise to the level of an Eighth Amendment violation. Walker is only liable for his actions or inactions that could be said to have caused the attack to happen. Walker's actions in filing a false report cannot be said to have caused the attack to happen because by then the attack had already occurred.").

7

*i.e.*, excessive force, remains pending. *See* Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 880-81 (same).

Plaintiff's claim against Sergeant O'Brian is similarly deficient. Plaintiff alleges that Sergeant O'Brian conspired in the preparation of a false report to cover up Deputy Donor's assault on plaintiff. (Complaint at 3.) The Complaint is devoid of allegations that, if true, would subject Sergeant O'Brian to liability for the force used by Deputy Donor. There is no "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

Accordingly, plaintiff's claims against defendants Davalos and O'Brian must be dismissed.

### III. **PLAINTIFF FAILS TO ALLEGE A CLAIM AGAINST WVDC, THE SHERIFF'S DEPARTMENT, OR DEFENDANTS IN THEIR OFFICIAL CAPACITY.**

In addition to the individual defendants, plaintiff has sued the Sheriff's Department and WVDC, a jail operated by the Sheriff's Department. (Complaint at 1, 3-4.) Plaintiff also sues the individual defendants in their official capacities. (*Id.* at 3.)

WVDC is a county jail facility operated by the Sheriff's Department. (Complaint at 2.) Although the Sheriff's Department may

be sued as an entity separately from the County of San Bernardino, *see* Streit v. County of Los Angeles, 236 F.3d 552, 565 (9th Cir. 2001), the jail facilities operated by the Sheriff's Department are not entities that may be sued, *see* Nunez v. Yolo County Jail, 2009 WL 2171894, *3 (E.D. Cal., July 21, 2009)(stating that a jail is not a suable entity), and Greene v. Alameda County Jail, 2008 WL 4225449, *2 (N.D. Cal., Sept. 15, 2008).  As WVDC is not a suable entity, it must be dismissed from this action.

To assert a Section 1983 claim against the Sheriff's Department, it is not sufficient to allege that sheriff's deputies or other officials committed a constitutional violation.  A local governmental entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't. of Social Services of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978).  Thus, a local governmental entity is not liable for the acts of its employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers" or the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690-91, 98 S. Ct. at 2035-36; *see also* Redman v. County of San Diego, 942 F.2d 1435, 1443-44 (9th Cir. 1991).

"There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005)(*internal quotation marks and citations omitted*); *see also* Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 1300 (1986). The Ninth Circuit has also opined that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Menotti, 409 F.3d at 1147 *(internal quotation marks and citations omitted)*.

Here, the Complaint contains no allegations regarding any official Sheriff's Department policy, custom, or practice, pursuant to which Deputy Donor used excessive force against plaintiff in violation of his constitutional rights. *See* Monell, 436 U.S. at 690-91, 694, 98 S. Ct. at 2035-36, 2037-38. Plaintiff, therefore, has not alleged a basis for holding the Sheriff's Department liable for his injuries.

With respect to plaintiff's official capacity claims against the individual defendants, an official capacity claim is merely another way of pleading a claim against the governmental entity of which the official is an agent. Monell, 436 U.S. at 690 n.55, 98 S. Ct. at 2035

1  n.55.  Thus, plaintiff's official capacity claims for damages against
2  the individual defendants fail for the same reasons as his claims
3  against the Sheriff's Department.

5     Accordingly, plaintiff's claims against WVDC, the Sheriff's
6  Department, and the individual defendants in their official capacities
7  must be dismissed.

**CONCLUSION**

11    For the foregoing reasons, the Complaint is dismissed with leave
12 to amend.  If plaintiff wishes to pursue this action, he is granted
13 thirty (30) days from the date of this Memorandum and Order within which
14 to file a First Amended Complaint that attempts to cure the defects in
15 the Complaint described herein.  The First Amended Complaint, if any,
16 shall be complete in and of itself.  It shall not refer in any manner
17 to the original Complaint.

19    **Plaintiff is explicitly cautioned that failure to timely file a**
20 **First Amended Complaint, or failure to correct the deficiencies**
21 **described herein, may result in a recommendation that this action be**
22 **dismissed pursuant to Fed. R. Civ. P. 41(b).**

24 DATED: December 8, 2010

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

11